# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LEHIGH DEVELOPMENT, LLC, BRENDAN WALSH, and CHRISTOPHER PATAFIO and MICHELE PATAFIO, Individually and as Trustees of The Christopher and Michele Patafio Living Trust, | ) ) ) ) ) ) ) | Civil Action No.: |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Atain Specialty Insurance Company ("Atain"), by and through counsel, files this Complaint for Declaratory Judgment against Defendants Lehigh Development, LLC ("Lehigh"), Brendan Walsh ("Walsh"), and Christopher Patafio and Michele Patafio, Individually and as Trustees of The Christopher and Michele Patafio Living Trust ("the Patafios"). In support thereof, Atain alleges as follows:

## NATURE OF THE ACTION

### 1.

This insurance coverage declaratory action arises out of the claim that Atain owes Lehigh and Walsh defense and indemnification in connection with an underlying action, styled *Christopher Patafio and Michele Patafio, Individually and as Trustees of The Christopher and Michele Patafio Living Trust v. Lehigh Development, LLC and Brendan Walsh*, Superior Court of Fulton County, Georgia, Civil Action File No. 2023CV384465 (the "Lawsuit"). Atain joins the Patafios as parties to this action because of their role as other parties in the Lawsuit, to ensure that it can obtain complete relief by resolving all issues between the parties.

### 2.

Atain seeks a judicial declaration that it has no duty to defend or indemnify Lehigh and Walsh (collectively, the "Lehigh Defendants") in the Lawsuit under the insurance policies Atain issued to Lehigh.

## THE PARTIES

### 3.

Atain is a corporation formed and existing under the laws of the State of Michigan, with its principal place of business in the State of Michigan. Atain is an

authorized surplus lines insurer, permitted to issue insurance in the State of Georgia. For the purposes of diversity, Atain is a citizen of Michigan.

4.

Defendant Lehigh Development, LLC is a limited liability company formed and existing under the laws of the State of Georgia. Lehigh's members are citizens and residents of Georgia. Lehigh is therefore a citizen and resident of Georgia. None of Lehigh's members are citizens or residents of Michigan. Lehigh may be served through its registered agent, James G. Coyle, at 100 North Point Center East, Suite 125, Alpharetta, Fulton County, Georgia 30022 or wherever Mr. Coyle may be found.

5.

Defendant Brendan Walsh is a citizen and resident of Georgia, residing at 1175 Canton Street, Roswell, Fulton County, Georgia 30075. Mr. Walsh may be served at his residence or wherever he may be found.

6.

Defendant Christopher Patafio is a citizen and resident of Georgia, residing at 160 Thompson Place, Roswell, Fulton County, Georgia 30075. Mr. Patafio may be served at his residence or wherever he may be found.

7.

Defendant Michele Patafio is a citizen and resident of Georgia, residing at 160 Thompson Place, Roswell, Fulton County, Georgia 30075. Ms. Patafio may be served at her residence or wherever she may be found.

## JURISDICTION AND VENUE

8.

Lehigh is a Georgia citizen that transacts business in the State of Georgia and has sufficient contacts with the State of Georgia such that this Court has personal jurisdiction over Lehigh.

9.

This Court has personal jurisdiction over Walsh because Walsh is a citizen and resident of the State of Georgia.

10.

This Court has personal jurisdiction over Christopher Patafio because Christopher Patafio is a citizen and resident of the State of Georgia.

11.

By filing the Lawsuit that forms the basis of this declaratory judgment action in the Superior Court of Fulton County, Georgia, Christopher Patafio transacted business in the State of Georgia and established sufficient minimum contacts in the

State of Georgia such that this Court has personal jurisdiction over Christopher Patafio.

12.

This Court has personal jurisdiction over Michele Patafio because Michele Patafio is a citizen and resident of the State of Georgia.

13.

By filing the Lawsuit that forms the basis of this declaratory judgment action in the Superior Court of Fulton County, Georgia, Michele Patafio transacted business in the State of Georgia and established sufficient minimum contacts in the State of Georgia such that this Court has personal jurisdiction over Michele Patafio.

14.

This Court has subject matter jurisdiction over each of the claims based on diversity grounds. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction as Atain has complete diversity of citizenship from each and every one of the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest of costs.

15.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this District and all Defendants are residents of the State of Georgia.

16.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District.

17.

This action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Atain's obligations under certain policies of insurance issued to Defendant Lehigh to which Atain subscribed. Atain is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policies, including the Lehigh Defendants' rights to defense and indemnity from the Lawsuit. An actual case and controversy of a justiciable nature exists between the parties involving those duties, rights, and obligations, if any, under the policies. Thus, Atain is entitled to bring this declaratory judgment action in this Court.

## THE WORK AND LAWSUIT

18.

Upon information and belief, the Patafios own the residential property located at 160 Thompson Place, Roswell, Georgia (the "Property").

19.

On or about January 6, 2020, Lehigh entered into a construction contract with the Patafios for certain work to be performed at the Property.

20.

On August 21, 2023, the Patafios filed a Complaint against the Lehigh Defendants in an action, styled *Christopher Patafio and Michele Patafio, Individually and as Trustees of The Christopher and Michele Patafio Living Trust v. Lehigh Development, LLC and Brendan Walsh*, Superior Court of Fulton County, Georgia, Civil Action File No. 2023CV384465 (the "Lawsuit"). A true and correct copy of the underlying Complaint in the Lawsuit is attached hereto as **Exhibit A** and hereby incorporated by reference.

21.

The Lawsuit involves allegations of construction defects and damages resulting from work performed by the Lehigh Defendants at the Property, located at 160 Thompson Place, Roswell, Georgia. *See generally* **Exhibit A**.

22.

The Lawsuit alleges that the Property includes approximately 0.54 acres of land, the Patafios' home, swimming pool, and personal belongings. *See* **Exhibit A, ¶¶ 3, 4, 12**.

7

23.

The Lawsuit alleges that the Patafios own and/or reside at the Property. *See* **Exhibit A, ¶ 3**.

24.

The Lawsuit alleges that the Patafios engaged Lehigh and Walsh to develop the land and construct a single-family home. *See* **Exhibit A, ¶ 13**.

25.

The Lawsuit alleges that the Lehigh Defendants' scope of work included demolition of an existing home, grading and site preparation, construction of a new home and swimming pool, and landscaping. *See* **Exhibit A, ¶ 14**.

26.

The Patafios allege that as part of this development work, the Lehigh Defendants and their subconstructors were required to design and install stormwater controls to handle stormwater flows from onsite and offsite to ensure usable space on the Property and to prevent ponding and oversaturation. *See* **Exhibit A, ¶ 15**.

27.

The Lawsuit alleges that the Lehigh Defendants designed and installed controls around the Property, including a series of underground stormkeeper

chambers to collect, retain, and release stormwater into the surrounding soil. *See* **Exhibit A, ¶¶ 17, 43**.

28.

The Lawsuit alleges that the Lehigh Defendants' controls and stormkeeper system at the Property failed. *See* **Exhibit A, ¶ 18**.

29.

The Lawsuit alleges that the Lehigh Defendants failed to perform necessary soil tests to determine whether the soils were properly compacted and suitable for installation of the underground stormwater chambers. *See* **Exhibit A, ¶ 19**.

30.

The Lawsuit alleges that the Lehigh Defendants buried and/or failed to remove construction trash and debris, which rendered the soil unsuitable for the stormkeeper system. *See* **Exhibit A, ¶ 20**.

31.

The Lawsuit also alleges that the Lehigh Defendants did not account for offsite flows in designing the stormkeeper system. *See* **Exhibit A, ¶ 26**.

32.

The Lawsuit further alleges that the poor soil compaction and materials, and the Lehigh Defendants' improper grading of the Property's driveway, prevented the stormkeeper system from properly working. *See* **Exhibit A, ¶¶ 21-23, 25**.

33.

The Patafios assert that as a result of the Lehigh Defendants' actions, the Property is oversaturated from pooling stormwater flows and rendered unusable. *See* **Exhibit A, ¶¶ 32, 45**.

34.

The Patafios allege that on November 15, 2022 and March 6, 2023, they provided written notice to the Lehigh Defendants of the Lehigh Defendants' responsibility for the damage at the Property and requested the Lehigh Defendants to remediate the issues and to make the Patafios whole, to which the Lehigh Defendants refused. *See* **Exhibit A, ¶¶ 27-28**. A true and correct copy of the November 15, 2022 letter is attached hereto as **Exhibit B** and hereby incorporated by reference. A true and correct copy of the March 6, 2023 letter is attached hereto as **Exhibit C** and hereby incorporated by reference.

35.

The Patafios allege that they also provided the Lehigh Defendants notice of issues with the Lehigh Defendants' work on multiple occasions, and prior to their issuance of the November 15, 2022 letter. *See* **Exhibit A, ¶ 27**.

36.

The Lawsuit and March 6, 2023 letter both attach a report dated April 16, 2022 prepared by JVG Civil Engineering (the "Engineer Report"). *See generally* **Exhibit A, ¶ 27; Engineer Report at Exhibit A, attachment "b";** *see also* **Exhibit C**.

37.

The Engineer Report contends that the stormwater flows at the Property are creating a "bare soil ditch" and "erosion of the subgrade topsoil[.]" *See* **Engineer Report at Exhibit A, attachment "b"**.

38.

The Patafios contend that the Lehigh Defendants' actions were in violation of the Georgia Stormwater Management Manual and City of Roswell Ordinances regarding Pre- and Post-Development Stormwater Management. *See* **Exhibit A, ¶ 35**.

39.

Upon information and belief, a true and correct copy of the Stormwater Management Manual and Covenant, which is referenced in the Lawsuit, is attached hereto as **Exhibit D** and hereby incorporated by reference.

40.

The Patafios assert claims against the Lehigh Defendants for negligent construction, negligence per se, breach of contract, breach of warranty, O.C.G.A. § 13-6-11 expenses of litigation and attorneys' fees, and punitive damages. *See generally* **Exhibit A**.

## COMMUNICATIONS REGARDING CLAIM AND LAWSUIT

41.

On or about November 15, 2022, the Patafios, by and through legal counsel, sent Lehigh and Walsh a notice of claim letter asserting constructions defects by Lehigh at the Property and seeking remediation. *See generally* **Exhibit B.**

42.

Upon information and belief, on or about December 1, 2022, Lehigh first informed Atain of the construction defect claims against Lehigh.

43.

On March 27, 2023, Atain, through its counsel, sent a reservation of rights letter to Lehigh regarding the construction defect claims asserted by the Patafios in their November 2022 letter ("ROR"). A true and correct copy of the March 27, 2023 ROR is attached hereto as **Exhibit E** and hereby incorporated by reference.

44.

The ROR requested that Lehigh provide Atain with any future demands or lawsuits so that Atain could evaluate its obligations under the insurance policies. *See* **Exhibit E, p. 13**.

45.

Atain later learned of the filing of the Lawsuit.

46.

On September 27, 2023, Atain, through its counsel, sent bilateral reservation of rights and nonwaiver agreements to Lehigh and Walsh ("Bilateral RORs"). True and correct copies of the September 27, 2023 Bilateral RORs and accompanying cover letters are attached hereto as **Exhibits F, G, H,** and **I**, respectively, and hereby incorporated by reference.

47.

Subject to a full reservation of its rights, Atain agreed to defend Lehigh and

Walsh in the Lawsuit under the September 27, 2023 Bilateral RORs. *See generally*

**Exhibits F, G, H,** and **I**.

48.

In the Bilateral RORs, Atain expressly reserved "the right to investigate, deny

coverage, withdraw the defense, file a declaratory judgment action, and seek

repayment of any non-covered defense costs and attorneys' fees." *Id.*

49.

In the Bilateral RORs, Atain also expressly reserved "the right to rely upon or

assert coverage defenses arising from any of the terms, conditions, and exclusions

of the Policies, including those not specifically discussed in the [Bilateral RORs]."

*Id***.**

## THE POLICIES

50.

Atain subscribed to Policy Nos. CIP382849 and CIP409029, which were

issued to "Lehigh Development, LLC" and provided commercial general liability

coverage, subject to the policies' terms, conditions, limitations, and exclusions, from

May 20, 2019, to May 20, 2021 (the "Policies"). True and correct copies of the

Policies are attached hereto as **Exhibits J** and **K**, respectively, and hereby incorporated by reference.

51.

The insuring agreement for the Policies' Coverage A provides as follows:

[Atain] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Atain] will have the right and duty to defend the insured against any 'suit' seeking those damages.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 1 of 16.

52.

To trigger the Policies' insuring agreements, the "bodily injury" or "property damage" must be caused by an "occurrence" in the coverage territory, that occurs during the Policies' periods, and must not be known prior to the Policies' inception. **Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 1 of 16.

53.

The Policies define "occurrence" to mean "accident, including continuous or repeated exposure to substantially the same general harmful conditions." **Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 15 of 16.

54.

The Policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of

tangible property that is not physically injured[.]" **Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 15 of 16.

55.

The Policies contain a Classification Limitation endorsement which states that "[c]overage under this policy is specifically limited to, and applies only to those classifications as described under the applicable Coverage Part or Schedule designated in the Declarations Page of this policy" and coverage is excluded for "any operation not specifically listed in the Coverage Part, Schedule or Declarations Page of this policy." **Exhibits J** and **K**, Policies, AF 33510 07/2012, p. 1 of 1.

56.

The Declarations Page for the Policies describe Lehigh's business as general contractor. **Exhibits J** and **K**, Policies, UNLPF-D-1 (07-17), p. 1 of 1.

57.

For Policy No. CIP382849, the premium classification references are: "contractors-executive supervisors or executive superintendents [ ]", "contractors-subcontracted work-in connection with building construction, reconstruction, repair or erection-one or two family dwellings", "dwellings-one family (lessor's risk only) including products/completed operations", "real estate development property [ ]", and "additional insured[.]" **Exhibit J**, Policy, UNLPF-SD-1L (07-17), p. 1 of 1.

16

58.

For Policy No. CIP409029, the premium classification references are: "contractors-executive supervisors or executive superintendents", "contractors-subcontracted work-in connection with building construction, reconstruction, repair or erection-one or two family dwellings", "real estate development property", "additional insured-owners, lessees or contractors [ ]", and "additional insured-mortgagee, assignee or receiver [ ]." **Exhibit K**, Policy, UNLPF-SD-1L (07-17), p. 1 of 1.

59.

The Policies include a Contractual Liability Exclusion which precludes coverage for:

> 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; or
>
> (2) Assumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an 'insured contract', reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property damage', provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'; and
>
> (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 2 of 16.

60.

The Policies define "insured contract" to include "[t]hat part of any other contract or agreement pertaining to your business [ ] under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your behalf." **Exhibits J** and **K**, Policies, CG 24 26 04 13, p. 1 of 1.

61.

The Policies state that:

> The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 1 of 16.

62.

The Policies contain Business Risk Exclusions, stating:

**2.  Exclusions**

This insurance does not apply to:

***

**j.    Damage To Property**

"Property damage" to:

***

(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it….

***

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

19

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 4-5 of 16.

63.

The Policies contain the following definitions:

**16.    "Products-completed operations hazard":**

20

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

\*\*\*

(2)    Work that has not yet been completed or abandoned.

However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed in your contract calls for work at more than one job site.

(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**21.    "Your Product"**

a.    Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)    You;

(b)    Others trading under your name;

21

\*\*\*

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"

\*\*\*

**22.**    **"Your work"**

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"

\*\*\*

**Exhibits J** and **K**, Policies, CG 00 01 04 13, pp. 15-16 of 16.

64.

The Policies contain a Total Pollution Exclusion, which states:

This insurance does not apply to:

(1) "Bodily injury", "Property Damage", "Personal and Advertising Injury" caused by or arising out of in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

\*\*\*

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order, writ, injunction, or judgment that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate or in any way respond to, or assess the presence or effect of any kind of "pollutants"; or

    (b) Claim or "suit" by or on behalf of a government authority for damages because of monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the presence or effect of any kind of "pollutants".

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed. Pollutants also includes carbon dioxide and any other substance that contributes to climate change.

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, pp. 6-7 of 10.

65.

The Policies contain a Professional Services Exclusion, stating:

This insurance does not apply and there shall be no duty to defend or indemnify any insured for any "occurrence", "suit", liability, demand or cause of action arising, in whole or part, out of any claim involving the rendering or failure to render any "professional service."

Further, when any insured has purchased or obtained errors and/ or omissions coverage or any other type of professional insurance coverage and the claim, in any way arises, in whole or part, out of the services performed by any insured, there shall be no duty to defend or indemnify under this policy. Whether or not

such E&O or any other professional coverage has been purchased or obtained, however, the first paragraph of this exclusion remains in full force and effect.

"Professional Service" includes, but is not limited to, any of the following: (1) accountant; (2) architect; (3) engineer; (4) insurance agent or broker; (5) lawyer; (6) any medical professional; (7) real estate agent or broker; (8) surveyor; (9) health inspector; (10) safety inspector; (11) any service where an insured is retained or asked to render an opinion, written or verbal, to a third-party; or (12) any other service that is of a professional nature, regardless of whether a license or certification is required.

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, p. 5 of 10.

66.

The Policies contain a Subsidence Exclusion, stating:

This insurance does not apply and there shall be no duty to defend or indemnify any insured for any 'occurrence', 'suit', liability, claim, demand or cause of action arising, in whole or part, out of any 'earth movement.' This exclusion applies whether or not the 'earth movement' arises out of any operations by or on behalf of any insured.

'Earth movement' includes, but is not limited to, any earth sinking, rising, settling, tilting, shifting, slipping, falling away, caving, erosion, subsidence, mud flow or any other movements of land or earth.

**Exhibits J** and **K**, Policies, AF-33530 06-2016, p. 1 of 1.

67.

The Policies contain a Fungi or Bacteria Exclusion, stating:

24

This insurance does not apply to:

**Fungi Or Bacteria**

a.      "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.      Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

                                        ***

C.      The following definition is added to the Definitions Section:

        "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**Exhibits J** and **K**, Policies, CG 21 67 12 04, p. 1 of 1.

                                    68.

The Policies contain a Punitive Damage Exclusion, stating:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered "suit" is brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such

> action, without liability, for such punitive or exemplary damages, fines or penalties.

**Exhibits J** and **K**, Policies, AF 980001 07/2012, p. 1 of 1.

69.

The Policies contain an Exclusion—Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program, which precludes coverage for "property damage" "arising out of either your ongoing operations or operations included within the 'products-completed operations hazard' at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved." **Exhibits J** and **K**, Policies, CG 21 54 01 96, p. 1 of 1. The Schedule identifies "[a]ll Owner Controlled Insurance Programs regardless of location, whether reported to Atain Specialty Insurance Company or not." *Id.*

70.

The Policies contain an Independent Contractors Liability Insurance Endorsement, which provides:

> The following special conditions are made a part of any applicable coverage form or endorsement that forms a part of your policy and you warrant and agree that:

26

1.    You have a written formal contract with such independent contractors, in force at the time of such injury or damage, verifying insurance of the types provided by this policy with the limits of insurance for such insurance equal to or greater than the limits of insurance provided by this policy; and you collect such evidence of insurance from the independent contractors before they enter the job site; and

2.    Such independent contractors name you as an additional insured on their Commercial General Liability insurance policy for damages because of "Bodily Injury", " Property Damage" or "Personal and Advertising Injury" arising out of or caused by the work, activities or operations of the independent contractor, including your supervision, review or inspection of the independent contractor; and

3.    Such independent contractors have agreed, in writing, to hold you harmless from all liability, including attorney fees, arising from their acts, errors or omissions; and

4.    Such independent contractors Commercial General Liability coverage is primary and our policy shall be excess of the insurance maintained by the independent contractors policy, notwithstanding the language of the Other Insurance provisions of the independent contractors policy.

Failure to comply with any of the above conditions does not alter the coverage provided by this policy. However, should you fail to comply with any of the above conditions, any subcontractors hired by any Insured will be considered your employees for premium computation purposes. You will be charged an additional premium with the entire cost of labor charged by such subcontractors used as payroll and assigned to the applicable class for the work performed.

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, p. 2 of 10.

71.

The Policies contain an Other Insurance endorsement, stating:

> This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to any insured. You are required to give notice of claim to all "potential insurers" within thirty days of giving notice of claim to us.

> We have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all those other insurers.

> We will pay only our share of the amount of loss, if any, that exceeds the sum of:

> The total amount that all such other insurance would pay for the loss in absence of this insurance; and
> The total of all deductible and self-insurance amounts under all such insurance.

> "Potential insurers" means all insurance companies who may be obligated to defend any insured as either a named insured or an additional insured.

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, pp. 9-10 of 10.

72.

The Policies contain a Notice Provision, stating:

SECTION IV – COMMERCIAL GENERAL LIABILITY
CONDITIONS

\*\*\*

2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit

      a.   You must see to it that we are notified as soon as
practicable of an 'occurrence' or an offense which
may result in a claim…

\*\*\*

      b.   If a claim is made or 'suit' is brought against any
insured, you must:

            (1)   Immediately record the specifics of the claim
or 'suit' and the date received; and

            (2)   Notify us as soon as practicable.

            You must see to it that we receive written notice of
the claim or 'suit' as soon as practicable.

      c.   You and any other involved insured must:

            (1)   Immediately send us copies of any demands,
notices, summonses or legal papers received
in connection with the claim or 'suit';

\*\*\*

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 11 of 16.

## COUNT ONE – DECLARATORY JUDGMENT:
## NO "PROPERTY DAMAGE" CAUSED BY AN "OCCURRENCE"

73.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set

forth herein.

29

74.

Subject to their terms, conditions, and exclusions, the Policies provide coverage for sums an insured becomes legally liable to pay as damages because of "property damage" caused by an "occurrence."

75.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

76.

The damages alleged in the Lawsuit, including but not limited to damages allegedly resulting from negligent construction, negligence per se, breach of contract, breach of warranty, O.C.G.A. § 13-6-11 expenses of litigation and attorneys' fees, and punitive damages, do not constitute "property damage" caused by an "occurrence" under the Policies.

77.

Furthermore, any "property damage" which occurred after the expiration of the Policies is not subject to coverage under the Policies.

78.

Accordingly, Atain is entitled to a declaration that it does not owe a duty to defend and/or indemnify the Lehigh Defendants for the allegations in the Lawsuit to

the extent the Patafios seek to recover damages that do not constitute property damage caused by an occurrence, or for any damage which occurred after expiration of the Policies.

## COUNT TWO – DECLARATORY JUDGMENT:
## THE CLASSIFICATION LIMITATION BARS COVERAGE IN
## CONNECTION WITH THE UNDERLYING LAWSUIT

### 79.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

### 80.

The Policies contain a Classification Limitation endorsement which limits coverage to only "those classifications as described under the applicable Coverage Part or Schedule designated in the Declarations Page of this policy[.]" *See* **Exhibits J** and **K**, Policies, AF 33510 07/2012, p. 1 of 1.

### 81.

The allegations in the Lawsuit do not arise out of the Lehigh Defendants' work related to "contractors-executive supervisors or executive superintendents [ ]", "contractors-subcontracted work-in connection with building construction, reconstruction, repair or erection-one or two family dwellings", "dwellings-one family (lessor's risk only) including products/completed operations", "real estate

development property [ ]", and "additional insured[.]" *See* **Exhibit J**, Policy, UNLPF-SD-1L (07-17), p. 1 of 1.

82.

The allegations in the Lawsuit do not arise out of the Lehigh Defendants' work related to "contractors-executive supervisors or executive superintendents", "contractors-subcontracted work-in connection with building construction, reconstruction, repair or erection-one or two family dwellings", "real estate development property", "additional insured-owners, lessees or contractors [ ]", and "additional insured-mortgagee, assignee or receiver [ ]." *See* **Exhibit K**, Policy, UNLPF-SD-1L (07-17), p. 1 of 1.

83.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit, to the extent the claims against them are precluded by the Policies' Classification Limitation endorsement.

## COUNT THREE – DECLARATORY JUDGMENT:
## THE CONTRACTUAL LIABLITY EXCLUSION BARS COVERAGE IN CONNECTION WITH THE UNDERLYING LAWSUIT

### 84.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

### 85.

The Policies preclude coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" except for liability for damages assumed in an "insured contract." **Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 2 of 16.

### 86.

The Lawsuit alleges that the Patafios entered into a contract with the Lehigh Defendants to develop the Property, including design and installation of stormwater controls. *See* **Exhibit A, ¶¶ 13-15, 43**.

### 87.

The Lawsuit alleges that the Lehigh Defendants breached this contract and are liable for damages incurred by the Patafios as a result of this breach and the Lehigh Defendants' purported defective work. *See* **Exhibit A, ¶¶ 44-46**.

33

88.

Under the Policies' Contractual Liability Exclusion, coverage does not exist for damages resulting from liabilities assumed by the Lehigh Defendants in a contract or agreement.

89.

The agreement between the Patafios and the Lehigh Defendants, as alleged in the Lawsuit, does not constitute an "insured contract."

90.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit resulting from property damage which the Lehigh Defendants assumed liability in a contract or agreement, which does not constitute an "insured contract".

**COUNT FOUR – DECLARATORY JUDGMENT:
THE BUSINESS RISK EXCLUSIONS BAR COVERAGE IN
CONNECTION WITH THE UNDERLYING LAWSUIT**

91.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

92.

The Policies contain a Damage To Property Exclusion, stating that insurance does not apply to:

> **j.    Damage To Property**
>
> "Property damage" to:
>
> (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> ***
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**Exhibits J** and **K**, Policies, CG 00 01 04 13, pp. 4-5 of 16.

93.

Atain is entitled to a declaration that the Policies do not provide coverage for any damage to property on which the Lehigh Defendants or any contractors or subcontractors were performing operations, or for property that must be repaired or replaced because the Lehigh Defendants' work was incorrectly performed on it.

35

94.

The Policies contain Damage To Your Product and Damage To Your Work

Exclusions, stating that insurance does not apply to:

      **k.**    **Damage To Your Product**

            "Property damage" to "your product" arising out of it or any part of it.

      **l.**    **Damage To Your Work**

            "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

            This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 5 of 16.

95.

Atain is entitled to a declaration that the Policies do not provide coverage for

costs to repair or replace any defective product of the Lehigh Defendants or defect

work performed by the Lehigh Defendants.

96.

The Policies contain a Damage To Impaired Property Or Property Not

Physically Injured Exclusion, stating that insurance does not apply to:

      **m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 5 of 16.

97.

Atain is entitled to a declaration that the Policies do not provide coverage in connection with the Lawsuit for any damages falling within the Damage To Impaired Property Or Property Not Physically Injured Exclusion.

98.

The Policies contain a Recall of Products, Work Or Impaired Property Exclusion, stating that insurance does not apply to:

**n.     Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

37

> (3)   "Impaired property";
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 5 of 16.

99.

The Lawsuit alleges that the Lehigh Defendants' work and product was defective, deficient, and inadequate.

100.

Atain is entitled to a declaration that the Policies do not provide coverage in connection with the Lawsuit for any costs to repair, replace, or remove any defective product, defective work or impaired property of the Lehigh Defendants, per the Recall of Products, Work Or Impaired Property Exclusion.

**COUNT FIVE – DECLARATORY JUDGMENT:**
**THE TOTAL POLLUTION EXCLUSION BARS COVERAGE IN**
**CONNECTION WITH THE UNDERLYING LAWSUIT**

101.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

102.

The Policies contain a Total Pollution Exclusion, stating:

38

This insurance does not apply to:

(1) "Bodily injury", "Property Damage", "Personal and Advertising Injury" caused by or arising out of in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

\*\*\*

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order, writ, injunction, or judgment that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate or in any way respond to, or assess the presence or effect of any kind of "pollutants"; or

    (b) Claim or "suit" by or on behalf of a government authority for damages because of monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the presence or effect of any kind of "pollutants".

\*\*\*

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, pp. 6-7 of 10.

103.

The Lawsuit alleges that the Patafios retained the Lehigh Defendants to develop the Property, including design and installation of stormwater controls, which the Lehigh Defendants allegedly failed to properly do. *See* **Exhibit A, ¶¶ 13-15, 18**.

104.

The Lawsuit alleges that the Lehigh Defendants buried and/or failed to remove construction trash and debris, which rendered the soil unsuitable for the stormkeeper system. *See* **Exhibit A, ¶ 20**.

105.

The Lawsuit asserts that as a result of the Lehigh Defendants' actions, the Property is oversaturated from pooling stormwater flows and rendered unusable. *See* **Exhibit A, ¶¶ 32, 45**.

106.

The Patafios contend these damages are due to the Lehigh Defendants' failure to perform necessary soil tests, failure to remove construction debris and organics, failure to design the stormkeeper system to account for offsite flows of stormwater, and failure to properly grade the driveway. **Exhibit A, ¶ 44.**

107.

The construction debris, leftover organics and stormwater runoff, as alleged in the Lawsuit, constitute "pollutants" under the Total Pollution Exclusion.

108.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit, as the claims

against them are precluded by the Policies' Total Pollution Exclusion. Atain is also

entitled to a declaration that it has no duty to defend or indemnify the Lehigh

Defendants in connection with the Lawsuit.

## COUNT SIX – DECLARATORY JUDGMENT:
## THE PROFESSIONAL SERVICES EXCLUSION BARS COVERAGE IN
## CONNECTION WITH THE UNDERLYING LAWSUIT

109.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set

forth herein.

110.

The Policies contain a Professional Services Exclusion, stating:

> This insurance does not apply and there shall be no duty to
> defend or indemnify any insured for any "occurrence", "suit",
> liability, demand or cause of action arising, in whole or part, out
> of any claim involving the rendering or failure to render any
> "professional service."
>
> ***
>
> "Professional Service" includes, but is not limited to, any of the
> following: (1) accountant; (2) architect; (3) engineer; (4)
> insurance agent or broker; (5) lawyer; (6) any medical
> professional; (7) real estate agent or broker; (8) surveyor; (9)
> health inspector; (10) safety inspector; (11) any service where an
> insured is retained or asked to render an opinion, written or
> verbal, to a third-party; or (12) any other service that is of a
> professional nature, regardless of whether a license or
> certification is required.

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, p. 5 of 10.

41

111.

The Lawsuit alleges that the Patafios retained the Lehigh Defendants to develop the Property, including design and installation of stormwater controls, which the Lehigh Defendants allegedly failed to properly do. *See* **Exhibit A, ¶¶ 13-15, 18**.

112.

The Lawsuit alleges that the Lehigh Defendants failed to perform necessary soil tests to determine whether the soils were properly compacted and suitable for installation of the underground stormwater chambers. *See* **Exhibit A, ¶ 19**.

113.

The Lawsuit also alleges that the Lehigh Defendants did not account for offsite flows in designing the stormkeeper system. *See* **Exhibit A, ¶ 26**.

114.

The Patafios contend the Property is oversaturated with stormwater flows due to the Lehigh Defendants' failure to perform necessary soil tests, failure to remove construction debris and organics, failure to design the stormkeeper system to account for offsite flows of stormwater, and failure to properly grade the driveway. **Exhibit A, ¶¶ 32, 44**.

115.

In support of the Patafios' claims, and attached to the Lawsuit, is the Engineer Report, which purports to set forth an independent analysis by an engineer concerning issues with the stormwater system and necessary testing that ought to have been conducted. *See generally* **Exhibit A, ¶ 27; Engineer Report at Exhibit A, attachment "b"**.

116.

The Lawsuit and all of the claims against the Lehigh Defendants are based on the Lehigh Defendants' alleged failure to properly render "professional service[s]".

117.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit, as the claims against them are precluded by the Policies' Professional Services Exclusion. Atain is also entitled to a declaration that it has no duty to defend or indemnify the Lehigh Defendants in connection with the Lawsuit.

## COUNT SEVEN – DECLARATORY JUDGMENT:
## THE SUBSIDENCE EXCLUSION BARS COVERAGE IN CONNECTION
## WITH THE UNDERLYING LAWSUIT

### 118.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

### 119.

The Policies contain a Subsidence Exclusion, stating:

> This insurance does not apply and there shall be no duty to defend or indemnify any insured for any 'occurrence', 'suit', liability, claim, demand or cause of action arising, in whole or part, out of any 'earth movement.' This exclusion applies whether or not the 'earth movement' arises out of any operations by or on behalf of any insured.

> 'Earth movement' includes, but is not limited to, any earth sinking, rising, settling, tilting, shifting, slipping, falling away, caving, erosion, subsidence, mud flow or any other movements of land or earth.

**Exhibits J** and **K**, Policies, AF-33530 06-2016, p. 1 of 1.

### 120.

The Patafios allege that they retained the Lehigh Defendants to develop their Property and as part of this work, the Lehigh Defendants were required to design and install stormwater controls to handle stormwater flows.  *See* **Exhibit A, ¶¶ 13, 15**.

121.

The Lawsuit alleges that the Lehigh Defendants failed to properly design and install controls around the Property, including the stormkeeper system. *See* **Exhibit A, ¶¶ 17-18, 43-44**.

122.

The Lawsuit asserts that as a result of the Lehigh Defendants' actions, the Property is oversaturated from pooling stormwater flows and rendered unusable. *See* **Exhibit A, ¶¶ 25-26, 32, 45**.

123.

In the Engineer Report, which is attached to the Lawsuit, the Patafios' retained engineer states that he inspected the Property and observed the rear yard has "unsuitably wet conditions and erosion of the subgrade topsoil and undermining the grass roots." *See generally* **Exhibit A, ¶ 27; Engineer Report at Exhibit A, attachment "b"**.

124.

In the Engineer Report, which is attached to the Lawsuit, the Patafios' retained engineer states that the "surface stormwater flows received within the rear yard are concentrating in the low area of the yard and creating a bare soil ditch." *See generally* **Exhibit A, ¶ 27; Engineer Report at Exhibit A, attachment "b"**.

125.

The erosion of the topsoil and creation of a bare soil ditch, as alleged in the Lawsuit, constitute "earth movement" under the Subsidence Exclusion.

126.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit, as the claims against them are precluded by the Policies' Subsidence Exclusion. Atain is also entitled to a declaration that it has no duty to defend or indemnify the Lehigh Defendants in connection with the Lawsuit.

**COUNT EIGHT – DECLARATORY JUDGMENT:
THE FUNGI OR BACTERIA EXCLUSION BARS COVERAGE IN
CONNECTION WITH THE UNDERLYING LAWSUIT**

127.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

128.

The Policies exclude coverage for "'property damage' which would not have occurred" but for "fungi" or bacteria as well as any associated "loss, cost or expenses" in responding to the "fungi" or bacteria. **Exhibits J** and **K**, Policies, CG 21 67 12 04, p. 1 of 1.

129.

The Lawsuit asserts that as a result of the Lehigh Defendants' defective work, the Property is oversaturated from pooling stormwater flows and rendered unusable, causing significant damages. *See* **Exhibit A, ¶¶ 25-26, 32, 45**. The Patafios do not set forth the specific damages caused by the pooling stormwater flows in their Lawsuit.

130.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit for property damage and loss, cost or expenses associated with mold, fungi or bacteria.

**COUNT NINE – DECLARATORY JUDGMENT:
COVERAGE EXCLUDES ATTORNEYS' FEES AND PUNITIVE
DAMAGES IN CONNECTION WITH THE UNDERLYING LAWSUIT**

131.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

132.

The insuring agreement for the Policies' Coverage A provides as follows:

> [Atain] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 1 of 16.

133.

The Policies contain a Punitive Damage Exclusion, stating:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered "suit" is brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such action, without liability, for such punitive or exemplary damages, fines or penalties.

**Exhibits J** and **K**, Policies, AF 980001 07/2012, p. 1 of 1.

134.

In the Lawsuit, the Patafios allege they are entitled to O.C.G.A. § 13-6-11 expenses of litigation and attorneys' fees, and punitive damages from the Lehigh Defendants. *See* **Exhibit A, ¶¶ 54-57**.

135.

Accordingly, Atain is entitled to a declaration that the Policies do not provide coverage in connection with the Lawsuit for expenses of litigation, attorneys' fees, and punitive damages.

**COUNT TEN – DECLARATORY JUDGMENT:**
**THE DESIGNATED OPERATIONS EXCLUSION BARS COVERAGE IN**
**CONNECTION WITH THE UNDERLYING LAWSUIT**

136.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

137.

The Policies contain an Exclusion—Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program, which precludes coverage for "property damage" "arising out of either your ongoing operations or operations included within the 'products-completed operations hazard' at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved." **Exhibits J** and **K**, Policies, CG 21 54 01 96, p. 1 of 1.

138.

Upon information and believe, a wrap-up policy exists or existed at one time. Thus, Atain is entitled to a declaration that the Policies do not provide coverage in connection with the Lawsuit for any damages falling within the Exclusion—Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program.

## COUNT ELEVEN – DECLARATORY JUDGMENT:
## THE CONTRACTORS LIABILITY INSURANCE PROVISION LIMITS
## COVERAGE IN CONNECTION WITH THE UNDERLYING LAWSUIT

139.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

140.

The Policies contain an Independent Contractors Liability Insurance Endorsement, stating:

> The following special conditions are made a part of any applicable coverage form or endorsement that forms a part of your policy and you warrant and agree that:
>
> 1.   You have a written formal contract with such independent contractors, in force at the time of such injury or damage, verifying insurance of the types provided by this policy with the limits of insurance for such insurance equal to or greater than the limits of insurance provided by this policy; and you collect such evidence of insurance from the independent contractors before they enter the job site; and
>
> 2.   Such independent contractors name you as an additional insured on their Commercial General Liability insurance policy for damages because of "Bodily Injury", " Property Damage" or "Personal and Advertising Injury" arising out of or caused by the work, activities or operations of the independent contractor, including your supervision, review or inspection of the independent contractor; and

50

3. Such independent contractors have agreed, in writing, to hold you harmless from all liability, including attorney fees, arising from their acts, errors or omissions; and

4. Such independent contractors Commercial General Liability coverage is primary and our policy shall be excess of the insurance maintained by the independent contractors policy, notwithstanding the language of the Other Insurance provisions of the independent contractors policy.

\*\*\*

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, p. 2 of 10.

141.

Atain is entitled to a declaration that coverage under the Policies in connection with the Lawsuit is limited to the extent that liability insurance covering independent contractors is available to the Lehigh Defendants.

**COUNT TWELVE – DECLARATORY JUDGMENT:
THE OTHER INSURANCE PROVISION LIMITS COVERAGE IN
CONNECTION WITH THE UNDERLYING LAWSUIT**

142.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

143.

The Policies contain an Other Insurance provision, stating:

This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to any insured. You are required to give notice of claim to all "potential insurers" within thirty days of giving notice of claim to us.

We have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all those other insurers.

We will pay only our share of the amount of loss, if any, that exceeds the sum of:

The total amount that all such other insurance would pay for the loss in absence of this insurance; and
The total of all deductible and self-insurance amounts under all such insurance.

"Potential insurers" means all insurance companies who may be obligated to defend any insured as either a named insured or an additional insured.

**Exhibits J** and **K**, Policies, AF 001 007 06/2017, pp. 9-10 of 10.

144.

Atain is entitled to a declaration that coverage under the Policies in connection with the Lawsuit is limited to the extent that other insurance is available to the Lehigh Defendants.

## COUNT THIRTEEN – DECLARATORY JUDGMENT:
## THE NOTICE CONDITION BARS COVERAGE IN CONNECTION WITH THE UNDERLYING LAWSUIT

### 145.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

### 146.

The Policies contains a Notice Provision, stating:

> SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS
>
> ***
>
> 2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
>> a.  You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim…
>>
>> ***
>>
>> b.  If a claim is made or 'suit' is brought against any insured, you must:
>>> (1)  Immediately record the specifics of the claim or 'suit' and the date received; and
>>>
>>> (2)  Notify us as soon as practicable.
>>
>>     You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.
>>
>> c.  You and any other involved insured must:
>>> (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit';

***

**Exhibits J** and **K**, Policies, CG 00 01 04 13, p. 11 of 16.

147.

On or about November 15, 2022, the Patafios, by and through legal counsel, sent Lehigh and Walsh a notice of claim letter asserting construction defects by the Lehigh Defendants at the Property and seeking remediation. *See generally* **Exhibit A, ¶ 27; Exhibit B.**

148.

In the Lawsuit, the Patafios allege that they provided the Lehigh Defendants notice of issues with the Lehigh Defendants' work on multiple occasions, and prior to their issuance of the November 15, 2022 letter. *See* **Exhibit A, ¶ 27**.

149.

Upon information and belief, the Lehigh Defendants visited and inspected the Property in April 2022, after receiving complaints from the Patafios regarding pooling stormwater.

150.

However, the Lehigh Defendants did not inform Atain of the construction defect claims against them until on or about December 1, 2022.

151.

The Lehigh Defendants' failure to provide notice to Atain of the pooling stormwater, complaints, and potential claim until months after their knowledge of same was untimely and in violation of the Policies' conditions.

152.

Accordingly, due to the Lehigh Defendants' untimely notice, Atain is entitled to a declaration that the Lehigh Defendants are not entitled to coverage for the Lawsuit and the circumstances underlying the Lawsuit. Atain is also entitled to a declaration that it has no duty to defend or indemnify the Lehigh Defendants in connection with the Lawsuit.

## COUNT FOURTEEN – DECLARATORY JUDGMENT: RECOVERY OF EXPENSES INCURRED IN PROVIDING DEFENSE TO THE LEHIGH DEFENDANTS

153.

Atain repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

154.

Atain agreed to provide the Lehigh Defendants a defense subject to a full and complete reservation of rights.

155.

In the reservation of rights, Atain expressly stated that it reserved the right to seek recovery of any non-covered defense costs and attorneys' fees.

156.

For the reasons detailed in this declaratory judgment action, the Lehigh Defendants are not entitled to defense or indemnity for any of the claims asserted in the Lawsuit.

157.

Accordingly, Atain is entitled to a declaration that the Lehigh Defendants must reimburse it for the defense costs and attorneys' fees Atain expended on the Lehigh Defendants' defense of the Lawsuit.

**WHEREFORE,** Atain respectfully requests that the Court:

(1)   Declare that the Policies do not provide coverage to the Lehigh Defendants in connection with the Lawsuit because there is no "property damage" caused by an "occurrence";

(2)   Declare that the Policies' Classification Limitation bars or limits coverage for the Lehigh Defendants in connection with the Lawsuit;

(3)   Declare that the Policies' Contractual Liability Exclusion bars or limits coverage for the Lehigh Defendants in connection with the Lawsuit;

(4)   Declare that the Policies' Business Risk Exclusions bar or limit coverage for the Lehigh Defendants in connection with the Lawsuit;

(5)   Declare that the Policies' Total Pollution Exclusion bars coverage for the Lehigh Defendants in connection with the Lawsuit, and therefore, Atain does not owe the Lehigh Defendants defense or indemnity from the Lawsuit;

(6)   Declare that the Policies' Professional Services Exclusion bars coverage for the Lehigh Defendants in connection with the Lawsuit, and therefore, Atain does not owe the Lehigh Defendants defense or indemnity from the Lawsuit;

(7)   Declare that the Policies' Subsidence Exclusion bars coverage for the Lehigh Defendants in connection with the Lawsuit, and therefore, Atain does not owe the Lehigh Defendants defense or indemnity from the Lawsuit;

(8)   Declare that the Policies' Fungi or Bacteria Exclusion bars or limits coverage for the Lehigh Defendants in connection with the Lawsuit;

(9)   Declare that the Policies bar coverage for any attorneys' fees and/or punitive damages awarded against the Lehigh Defendants in connection with the Lawsuit;

(10)   Declare that the Policies' Designated Operations Exclusion bars or limits coverage for the Lehigh Defendants in connection with the Lawsuit;

(11)   Declare that the Policies' Independent Contractors Liability Insurance Provision limits coverage for the Lehigh Defendants in connection with the Lawsuit;

(12)   Declare that the Policies' Other Insurance Provision limits coverage for the Lehigh Defendants in connection with the Lawsuit;

(13)   Declare that the Policies' Notice Condition bars coverage for the Lehigh Defendants in connection with the Lawsuit;

(14)   Declare that Atain has no duty to defend or indemnify the Lehigh Defendants in the Lawsuit;

(15)   Declare that Atain is entitled to recover expenses incurred related to the defense it provided the Lehigh Defendants subject to a reservation of rights; and

(16)   Award Atain such other further relief that the Court may deem just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

This 22nd day of November, 2023.

**FIELDS HOWELL LLP**
665 8th Street NW
Atlanta, Georgia  30318
404.214.1250 (Telephone)
404.214.1251 (Facsimile)
gmast@fieldshowell.com
mpalmer@fieldshowell.com

/s/ Gregory L. Mast
Gregory L. Mast
Georgia Bar No.:  476191
Megan A. Palmer
Georgia Bar No.:  274335
*Counsel for Plaintiff Atain*
*Specialty Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LEHIGH DEVELOPMENT, LLC, BRENDAN WALSH, and CHRISTOPHER PATAFIO and MICHELE PATAFIO, Individually and as Trustees of The Christopher and Michele Patafio Living Trust, | ) ) ) ) ) ) ) | Civil Action No.: |
| Defendants. | ) | |

## <u>RULE 7.1D CERTIFICATE OF TYPE, FORMAT, AND FONT SIZE</u>

Pursuant to Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and prepared with 14-point Times New Roman font.

This 22nd day of November, 2023.

**FIELDS HOWELL LLP**
665 8th Street NW
Atlanta, Georgia  30318
404.214.1250 (Telephone)
404.214.1251 (Facsimile)
gmast@fieldshowell.com

*/s/ Gregory L. Mast*
Gregory L. Mast
Georgia Bar No.:  476191